IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1), DENNIS KUNIYUKI MITSUNAGA (2), TERRI ANN OTANI (3), AARON SHUNICHI FUJII (4), CHAD MICHAEL MCDONALD (5), SHERI JEAN TANAKA (6),<br><br>Defendants. | CR. NO. 22-00048 JMS-WRP<br><br>ORDER DENYING DEFENDANT SHERI JEAN TANAKA'S MOTION TO DISMISS COUNT ONE OF FIRST SUPERSEDING INDICTMENT AND RELATED JOINDERS, ECF NOS. 205, 210, 212, 214, 215 & 216 |

## ORDER DENYING DEFENDANT SHERI JEAN TANAKA'S MOTION TO DISMISS COUNT ONE OF FIRST SUPERSEDING INDICTMENT AND RELATED JOINDERS, ECF NOS. 205, 210, 212, 214, 215 & 216

### I. INTRODUCTION

In this public corruption prosecution, Defendant Sheri Jean Tanaka ("Tanaka") moves to dismiss Count One of the First Superseding Indictment ("FSI") on the grounds that it fails to allege an explicit quid pro quo "that preceded and controlled the delivery of the official act by the public official."  ECF No. 205 at PageID.1051.  As set forth below, the court finds that the FSI adequately pleads a quid pro quo as required by law, and thus DENIES the Motion.

## II.  BACKGROUND

A.  **FSI Allegations**

The FSI alleges two counts against Defendants Keith Mitsuyoshi Kaneshiro ("Kaneshiro"), Dennis Kuniyuki Mitsunaga ("Mitsunaga"), Terri Ann Otani ("Otani"), Aaron Shunichi Fujii ("Fujii"), Chad Michael McDonald ("McDonald"), and Tanaka (collectively, "Defendants").  First—as relevant to the instant Motion—the FSI alleges that Defendants conspired to commit honest services fraud and federal program bribery under 18 U.S.C. § 371.  Second—and not relevant to the instant Motion—the FSI alleges that Defendants conspired against civil rights in violation of 18 U.S.C. § 241.  ECF No. 70.

In sum, the FSI alleges as follows: Defendants Mitsunaga, Otani, Fujii, McDonald, and Tanaka were agents of Mitsunaga and Associates, Inc. ("MAI") (collectively referred to as "MAI Defendants"), and Kaneshiro was the elected Prosecuting Attorney for the City and County of Honolulu.  In November 2011, after voicing disagreements with Mitsunaga, MAI terminated LJM, an MAI project architect.  LJM filed a discrimination claim with the United States' Equal Employment Opportunity Commission—and later in federal court—alleging violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.  The FSI alleges in part that the MAI Defendants engaged in acts of bribery so that Kaneshiro would maliciously

2

investigate and prosecute LJM as a form of retaliation against her for suing MAI in federal court, and as an effort to interfere with her rights to litigate those claims in federal court. *Id*. Specifically, the FSI alleges that the Defendants conspired to commit the following offenses:

> (1) Honest Services Wire Fraud, that is, having devised and intended to devise a material scheme and artifice to defraud the City and County of Honolulu, Hawaii, and its citizens of their right to the honest services of KANESHIRO through a quid pro quo bribery, to transmit and cause to be transmitted in interstate commerce by means of wire communications, certain writings, signs, signals and sounds for the purpose of executing and in furtherance of such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346;
>
> (2) Federal Program Bribery, that is, corruptly giving, offering, and agreeing to give things of value to any person, with intent to influence and reward KANESHIRO, an agent and employee of the City and County of Honolulu and agency thereof, in connection with any business, transaction, or series of transactions of the City and County of Honolulu involving anything of value of $5,000 or more, during years that the City and County of Honolulu received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2); and
>
> (3) Federal Program Bribery, that is, KANESHIRO, an agent and employee of the City and County of Honolulu and agency thereof, corruptly solicited, demanded, accepted, and agreed to accept things of value from any person, intending to be influenced and rewarded in connection with any business,

3

> transaction, or series of transactions of the City and County of Honolulu involving anything of value of $5,000 or more, during years that the City and County of Honolulu received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(l)(B).

ECF No. 70 at PageID.173–74.

And under the heading "Manner and Means of the Conspiracy," paragraph 21(3) of the FSI alleges that:

> In exchange for the campaign contributions given to him by MITSUNAGA, OTANI, FUJII, MCDONALD, TANAKA, and others, KANESHIRO would agree to take official action and exercise his authority as the Prosecuting Attorney for the City and County of Honolulu to open an investigation into and prosecute former MAI employee L.J.M. The prosecution of L.J.M. continued until her case was dismissed with prejudice in a written order by Judge Karen T. Nakasone on September 15, 2017, and the time to appeal lapsed on or about October 15, 2017.

*Id.* at PageID.175.

### B. Procedural Background

On May 17, 2023, Tanaka filed—and all other Defendants subsequently joined substantively—the present Motion to Dismiss Count One of First Superseding Indictment. ECF Nos. 205, 210, 212, 214, 215 & 216. The United States filed a Response on June 9, 2023, and Tanaka filed a Reply on June

20, 2023.  ECF Nos. 209 & 217.  The court decides the matter without a hearing pursuant to Criminal Local Rule 12.2(a)(1).

### III.  STANDARDS OF REVIEW

Tanaka moves for dismissal under Federal Rules of Criminal Procedure 12(b)(3)(A)(v) and 12(b)(3)(B)(v).  A motion to dismiss is generally "'capable of determination' before trial if it involves questions of law rather than fact."  *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

Rule 12(b)(3)(B)(v) provides that a party may object to the indictment due to a "failure to state an offense."  An indictment must meet the requirements of both the due process clause and Federal Rule of Criminal Procedure 7.  *United States v. Huping Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012).  Under the due process clause, an indictment "is sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Id*. (internal quotation marks omitted).  Implied, necessary elements—that is, those not contained in the statute itself— must also be alleged in the indictment.  *United States v. Davis*, 33 F.4th 1236, 1240 (9th Cir. 2022).  Federal Rule of Criminal Procedure 7 requires that an indictment

"be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

> Further,
>
> [a]n indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy. The test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.

*United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (internal citation and quotation marks omitted); *see also Huping Zhou*, 678 F.3d at 1113.

Rule 12(b)(3)(A)(v) provides that a defendant may object to the indictment based on "an error in the grand-jury proceeding." Generally, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974); *see also United States v. Renzi*, 651 F.3d 1012, 1027 (9th Cir. 2011). Instead, dismissal of the indictment "is appropriate only if it is established that [a] violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotation marks omitted).

6

Here, the challenges under Rules 12(b)(3)(A)(v) and 12(b)(3)(B)(v) rise or fall together.  That is, Tanaka argues that because the FSI fails to adequately plead the quid pro quo requirement, "there is no guarantee that the grand jurors were presented with such evidence before they returned an indictment."  ECF No. 205-1 at PageID.1061.

## IV.  ANALYSIS

The FSI charges a conspiracy under 18 U.S.C. § 371, with the objects of the conspiracy being honest services wire fraud (18 U.S.C. §§ 1343 and 1346) and federal program bribery (18 U.S.C. §§ 666(a)(2) and 666(a)(1)(B)).  The honest services fraud is charged as a "quid pro quo" bribery offense.  ECF No. 70 at PageID.173.  And although a § 666 offense does not require proof of a quid pro quo, *United States v. Garrido*, 713 F.3d 985, 996 (9th Cir. 2013), it is clear that the FSI alleges a quid pro quo bribery under § 666 as well.  *See* ECF No. 70. at PageID.175.  Thus, whether looking at the honest services fraud object of the conspiracy or the federal program bribery object of the conspiracy, the FSI must allege a quid pro quo bribery under the law.  Further, although cases do not always distinguish between the nature to the quid pro quo necessary to prove a case involving campaign contributions versus non-campaign contributions, the court applies law specific to campaign contribution quid pro quo bribery cases.

After setting forth the law applicable to campaign contribution quid pro quo cases, the court addresses whether the FSI sufficiently alleges quid pro quo bribery in the specific context of campaign contributions.

## A.     The Quid Pro Quo Requirement in Campaign Contribution Cases

It is evident from the FSI that the "quid" in this case is campaign contributions. *See id*. (alleging that "[i]n exchange for campaign contributions . . . Kaneshiro would agree to take official action and exercise his authority as the Prosecuting Attorney for the City and County of Honolulu to open an investigation into and prosecute former MAI employee L.J.M."). And in bribery cases involving campaign contributions, the Supreme Court has set forth limiting principles to address First Amendment concerns and to avoid overreach.[1] Starting with

---

[1] In the context of the payment of campaign contributions to legislators, and in reviewing a conviction under the Hobbs Act (18 U.S.C. § 1951), the Court stated:

> Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator.  It is also true that campaigns must be run and financed.  Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done. Whatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right."

*McCormick v. United States*, 500 U.S. 257, 272 (1991).

*McCormick*, the Court held the receipt of campaign contributions violates the Hobbs Act "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking." 500 U.S. at 273.[2]

One year later, *Evans v. United States*, 504 U.S. 255 (1992) examined a jury charge that the defendant claimed "did not properly describe the *quid pro quo* requirement for conviction if the jury found that the payment was a campaign contribution." *Id*. at 268. Specifically, the challenged jury charge included an instruction that "if a public official demands or accepts money in exchange for [a] specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution." *Id*. at 258. The Court "rejected[ed] petitioner's criticism of the instruction," finding that it complied with *McCormick* and that "the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Id*. at 268.

---

[2] These principles apply equally to both honest services fraud and federal program bribery when charged as quid pro quo bribery based on campaign contributions. *See, e.g.*, *United States v. Inzunza*, 638 F.3d 1006 (9th Cir. 2011) (applying *McCormick* to honest services fraud); *United States v. Siegelman*, 640 F.3d 1159, 1170 (11th Cir. 2011) (applying *McCormick* to § 666 federal program bribery); *United States v. Donagher*, 520 F. Supp. 3d 1034, 1044 (N.D. Ill. 2021) (same).

The Ninth Circuit has also provided guidance. *United States v. Carpenter*, 961 F.2d 824 (9th Cir. 1992) (decided after *McCormick* but before *Evans*), examined Hobbs Act convictions based on the receipt of campaign contributions. On appeal, the defendant argued insufficiency of the evidence, claiming that the *McCormick* "explicitness requirement cannot be met unless an official has specifically stated that he will exchange official action for a contribution." *Id*. at 827. The Ninth Circuit disagreed:

> To read *McCormick* as imposing such a requirement would allow officials to escape liability under the Hobbs Act with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money.
>
> In our view, what *McCormick* requires is that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain. We noted in [*United States v. Montoya*, 945 F.2d 1068, 1071 (9th Cir. 1991)] that the explicitness requirement serves to distinguish between contributions that are given or received with the "anticipation" of official action and contributions that are given or received in exchange for a "promise" of official action. *Montoya*, 945 F.2d at 1073 (quoting *McCormick*, 111 S. Ct. at 1818 (Scalia, J., concurring)). When a contributor and an official clearly understand the terms of a bargain to exchange official action for money, they have moved beyond "anticipation" and into an arrangement that the Hobbs Act forbids. This understanding need not be verbally explicit. The jury may consider both direct and circumstantial evidence, including the context in which a conversation took place, to determine if there was a meeting of the minds on a quid pro quo. As we read *McCormick*, the explicitness requirement is satisfied so

long as the terms of the quid pro quo are clear and unambiguous.

*Id*.

Almost 20 years later, in an honest services fraud prosecution involving campaign contributions, *Inzunza* discussed *McCormick's* explicitness requirement:

> We note that this requirement of explicitness refers to the promise of official action, not the connection between the contribution and the promise. An official may be convicted without evidence equivalent to a statement such as: "Thank you for the $10,000 campaign contribution. In return for it, I promise to introduce your bill tomorrow." The connection between the explicit promise of official action and the contribution must be proved, but the proof may be circumstantial, under the test as it is stated in *McCormick* and elaborated in *Carpenter*, 961 F.2d at 827.

638 F.3d at 1014. In other words, although the *terms* of the agreement must be explicit—that is, they must be clear and unambiguous—the *manner* in which the parties reach the agreement need not be.

Finally, the Supreme Court has determined that honest services fraud "draws content" from the federal official bribery statute, 18 U.S.C. § 201(c)(1). *Skilling v. United States*, 561 U.S. 358, 412 (2010). And § 201(c)(1) bribery requires proof of "a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404–05 (1999).

## B. The FSI Sufficiently Pleads the Required Quid Pro Quo

*Evans* determined that a jury charge satisfied *McCormick's* quid pro quo requirement where the jury was instructed that "if a public official accepts money *in exchange for* [a] specific requested exercise of his or her official power," then the Hobbs Act is violated, "regardless of whether the payment is made in the form of a campaign contribution." *Evans*, 504 U.S. at 258, 268–69 (emphasis added). And here, the FSI closely tracks that language, alleging that

> *In exchange for* the campaign contributions given to him by MITSUNAGA, OTANI, FUJII, MCDONALD, TANAKA, and others, KANESHIRO *would agree to take official action and exercise his authority* as the Prosecuting Attorney for the City and County of Honolulu to open an investigation into and prosecute former MAI employee L.J.M.

ECF No. 70 at PageID.175 (emphasis added). That is, the FSI alleges that Kaneshiro (a public official) accepted money (campaign contributions) "in exchange for" a specific requested exercise of his official power (that he would agree to open an investigation into and prosecute LJM).

In fact, the Supreme Court has itself used "in exchange for" language to describe the quid pro quo requirement for the federal bribery statute, 18 U.S.C. § 201(c)(1)—for bribery "there must be a quid pro quo—a specific intent to give or receive something of value in exchange for an official act." *Sun-Diamond Growers of Cal.*, 526 U.S. at 404–05. And, as stated above, honest services fraud

"draws content" from § 201(c)(1). *Skilling*, 561 U.S. at 412. The Ninth Circuit has also approved the "in exchange for" language as expressing the required quid pro quo: "the explicitness requirement serves to distinguish between contributions that are given or received with the 'anticipation' of official action and contributions that are given or received *in exchange for* a 'promise' of official action." *Carpenter*, 961 F.2d at 827 (emphasis added). As such, the FSI adequately pleads that Kaneshiro received campaign contributions "in exchange for" a promise of official action.[3]

The plain meaning of "in exchange for" further supports this finding. "In exchange for" means "as payment," *United States v. Turner*, 684 F.3d 244, 255 (1st Cir. 2012) (citing Webster's Third New International Dictionary 792 (1993), or in "trade," *United States v. Morehouse*, 34 F.4th 381, 390 (4th Cir. 2022) (citing the definition of exchange in Merriam-Webster.com, https://www.merriam-webster.com/dictionary/exchange (last visited June 28, 2023)).[4] In other words,

---

[3] To be clear, this Order does not attempt to address the exact parameters of the jury instructions. Instead, it finds that the FSI sets forth the elements of the offense charged, fairly informs Tanaka of the charge against which she must defend, and enables her to plead double jeopardy to bar any future prosecution.

[4] Similarly, Webster's Ninth New Collegiate Dictionary 432 (1991), defines "exchange" as "the act of giving or taking one thing in return for another." Oxford English Dictionary defines "exchange" as "[t]he action, or an act, of reciprocal giving and receiving[.]" *See* https://www.oed.com/view/Entry/65762?redirectedFrom=in+exchange+for& (last visited June 28, 2023). And Blackstone Comm. (1767) II. 323 defines "exchange" as "a mutual grant of equal interests, the one in consideration of the other." *Id*. Whatever definition used, they all fit neatly within the concept of a quid pro quo—something for something. Black's Law Dictionary (11th ed. 2019).

the "in exchange for" language as used in the FSI evinces that Kaneshiro accepted campaign contributions as payment for—or, in trade for,—the performance of specific official acts.

Despite this caselaw, Tanaka argues that the FSI is also required to allege—but does not—that "the illicit agreement precedes and controls the official act," and that an "indictment that fails to allege an explicit quid pro quo agreement that precedes delivery of the official act is fatally flawed," because "the grand jury might therefore indict improperly based on the erroneous belief that the mere delivery of the official act provides sufficient evidence of the illicit agreement itself." *See* ECF No. 205-1 at PageID.1061. Tanaka claims that this requirement stems from language in *McCormick* stating that

> [t]he receipt of such contributions is also vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking.

500 U.S. at 273.[5] But, as the government correctly argues, this language does not create an additional element of quid pro quo bribery, but instead simply explains

---

[5] Tanaka also relies on an out-of-circuit district court case, *United States v. Benjamin*, 2022 WL 17417038, at *16 (S.D.N.Y. Dec. 5, 2022) (stating, based on *McCormick*, that "the explicit agreement must precede the official conduct"). Rather than discuss *Benjamin's* interpretation of *McCormick* under Second Circuit law, the court focuses on controlling Supreme Court and Ninth Circuit law.

14

that with proof of an explicit quid pro quo, the official's conduct will necessarily be controlled by that explicit agreement. *McCormick* makes this clear—if there is an explicit promise by the official to perform or not perform an official act, then *in such situations* the official conduct will be controlled by the terms of the agreement.[6] That the conduct will be controlled by the agreement follows naturally from an explicit quid pro quo.

To be sure, Tanaka is certainly correct that the performance of an official act cannot support a bribery conviction if there was no agreement—a clear and unambiguous one—to provide a campaign contribution in return for the official act. *See United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) ("Although the timing of the *payment* may not provide a conclusive answer as to whether that payment is a bribe or a gratuity, the timing of the *agreement to make or receive a payment* may: one cannot agree to perform an act in exchange for payment when that act has already been performed. Therefore, if the agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe."); *United States v. Correia*, 55 F.4th 12, 31 (1st Cir. 2022) ("But timing is critical: as

---

[6] *Evans* determined that a bribery offense "is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense." 504 U.S. at 268. Thus, to say that an explicit agreement must precede the official act is misleading, as it assumes the commission of the act. What is required, however, is that the terms of the quid pro quo be clear and unambiguous, regardless of whether the official in fact performs the promised act.

15

long as the agreement to exchange a thing of value for an official act is made before the act is performed, the requisite quid pro quo is established."); *United States v. Griffin*, 154 F.3d 762, 764 (8th Cir. 1998), *as amended* (Sept. 8, 1998) ("The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the *quid pro quo*, or the agreement to exchange cash for official action."); *United States v. Baker*, 2021 WL 1556180, at *2 (E.D. Ark. Apr. 20, 2021) (stating that "it's the timing of the agreement—not the timing of the payment—that differentiates a bribe from a gratuity").[7]

But here, as set forth above, the FSI alleges that Kaneshiro accepted contributions in exchange for a specific requested exercise of official power, and thus the grand jury could not have been under any mistaken belief that the mere delivery of an official act in combination with a campaign contribution was sufficient to indict. Stated differently, the FSI pleads the sequential relationship between the quid and the quo as Tanaka claims it should—by stating that in exchange for "the" campaign contributions (meaning the specific campaign

---

[7] Of course, the *payment* for the bribe may come before or after the official act. *See Griffin*, 154 F.3d at 764 ("The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the *quid pro quo*, or the agreement to exchange cash for official action."); *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998) ("Bribes often are paid before the fact, but it is only logical that in certain situations the bribe will not actually be conveyed until the act is done.") (internal quotation marks omitted); *see also United States v. Harvey*, 532 F.3d 326, 335 (4th Cir. 2008).

contributions referenced in the FSI), "Kaneshiro would agree to take official action," the FSI makes clear that the agreement preceded the official act.[8]

Finally, Tanaka relies on *Benjamin's* analysis of the quid pro quo requirement, finding that an explicit promise under *McCormick* must be "express," 2022 WL 17417038, at *13. But *Benjamin* (currently under appeal) is unhelpful—it relies on Second Circuit law, which—at least as interpreted by *Benjamin*—is clearly at odds with *Carpenter* and *Inzunza*.[9] *Benjamin*, stating that it was "[b]ound by guidance from the Second Circuit," *id.* at *15, determined that because an express agreement is required, the indictment's "in exchange for" language was insufficient because it could encompass an implied quid pro quo. *Id.* at *14. This rule simply does not apply in the Ninth Circuit.[10] In short, there is no requirement to allege an express agreement in the FSI.

---

[8] In her Reply, Tanaka argues that the court should apply the rule of lenity to require the FSI to allege an explicit quid pro quo agreement that precedes and controls the future official action. *See* ECF No. 217 at PageID.1194. Here, the court finds no occasion to invoke the rule of lenity. As stated above, the FSI alleges what is required under Supreme Court and Ninth Circuit precedent. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8, (2016) (stating that the rule of lenity "applies only when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended") (citation and internal quotation marks omitted).

[9] In fact, *Benjamin* criticized *Carpenter's* clear and unambiguous requirement, stating that the "problem with this interpretation is that it would seemingly encompass a quid pro quo that is entirely *implicit*—that is, based on unspoken assumptions, winks and nods—so long as the terms of the bargain were 'clear and unambiguous' to the parties themselves." *Id.* at *9.

[10] In her Reply, Tanaka states that she is not relying on *Benjamin's* requirement of an express quid pro quo, but instead relies on the portion of the order, relying on *McCormick*, that

(continued . . . )

## V. **CONCLUSION**

Based on the foregoing, the court DENIES Defendant Tanaka's Motion to Dismiss and the related joinders, ECF Nos. 205, 210, 212, 214, 215, & 216.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 28, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Kaneshiro et al.*, Cr. No. 22-00048 JMS-WRP, Order Denying Defendant Sheri Jean Tanaka's Motion to Dismiss Count One of First Superseding Indictment and Related Joinders, ECF Nos. 205, 210, 212, 214, 215 & 216

---

states that the government must prove a quid pro quo in which the agreement "precedes and controls the official act." ECF No. 217 at PageID.1190. The court nonetheless addresses *Benjamin's* express quid pro quo requirement as Tanaka appears to raise the issue in her Opening Brief. ECF No. 205-1 at PageID.1066–68.